IRA ELLIOTT, APPELLANT, V. FRED WILLE ET AL., APPELLEES.

FILED APRIL 30, 1924.  No. 23850:

1. **Eminent Domain**: ELECTRICITY: PUBLIC USE. Chapter 217, Laws 1919, being sections 7147 to 7154, inclusive, Comp. St. 1922, as amended by chapter 169, Laws 1923, providing for the creation and incorporation of districts for the distribution within the district of light, heat and power by means of electric current to be paid for by taxation, are not in contravention of the implied constitutional inhibition that private property may no. be taken for a private purpose without the consent of the owner.

2. ——: ——: ——. The distribution of light, heat and power as contemplated in sections 7147-7154, Comp. St. 1922, as amended by chapter 169, Laws 1923, is for a public use as distinguished from a private purpose.

3. **Statutes**: VALIDITY: TITLE. Chapter 217, Laws 1919, does not contravene section 14, art. III of the Constitution, as recorded in Comp. St. 1922, which declares that "No bill shall contain more than one subject, and the same shall be clearly expressed in its title." Such clause in the Constitution does not require that the title to an act shall be a complete abstract of the bill; its purpose is to prevent surreptitious legislation.

4. ——: ——. Sections 7147-7154 Comp. St. 1922, as amended by chapter 169, Laws 1923, are not in conflict with sections 6 and 7, art VIII, of the Constitution, as such constitutional provisions are recorded in Comp. St. 1922.

APPEAL from the district court for Platte county: LOUIS LIGHTNER, JUDGE. *Affirmed.*

*Lambert, Shotwell & Shotwell.* for appellant.

*Courtright, Sidner, Lee & Gunderson, contra.*

*Abbott, Rohn, Robins & Dunlap, amici curiæ.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY and GOOD, JJ., and REDICK, District Judge.

DAY, J.

The plaintiff, on behalf of himself and others similarly situated, brought this action against the Columbus Farmers' Light District, a corporation, and Fred Wille *et al.*, directors of said corporation, to enjoin the defendants and each of them from exercising certain powers authorized by provisions of the statute hereinafter referred to. The defendants filed a demurrer to the petition, which was sustained. Plaintiff elected to stand on his petition; whereupon the trial court dismissed the action. From this judgment the plaintiff appeals.

The question presented by this appeal involves the constitutionality of the statutes in question. The plaintiff in his petition alleged in substance that he is an elector, taxpayer, and freeholder in Platte county, and the owner of property within the defendant district; that the defendants, pretending to act under provisions of the statute, are about to, and will unless enjoined, issue bonds of the district to be paid for by taxation upon the property in said district. The petition further recites that in August, 1923, certain freeholders of Platte county, sufficient in number to comply with the statute, filed a petition with the county board under the provisions of chapter 217, Laws 1919, being sections 7147-7154, Comp. St. 1922, including an amendment to section 7153 as embraced in chapter 169, Laws 1923. The petition filed with the county board prayed that the question of the formation of a district for the distribution of light, heat and power by electric current be submitted to the electors of the proposed district, the boundaries of which were fully described in the petition. The petitioners estimated the cost of the distribution system at $15,000, and proposed the method of raising the necessary funds by the issuance of bonds and making a small additional charge

for services above the actual cost thereof, to take care of repairs, depreciation and upkeep. They also asked that three directors be elected to manage the business of the district. Plaintiff's petition further alleges that, pursuant to the petition of the freeholders, the county board duly called a special election, which resulted in favor of the formation of the district, and the election of the three directors, defendants in this action; that the result of said election was duly published as required by law; that thereafter the electors of said district met and adopted certain by-laws for the management of the affairs of the district, and named the district the "Columbus Farmers' Light District." The plaintiff's petition further alleges that the defendant corporation and the individual defendant directors for and on behalf of the corporation are about to issue bonds of the district in the sum of $15,000 for the purpose of constructing an electric distributing system throughout the district, and are claiming and assuming to have power to make contracts for and on behalf of the district, and are threatening to incur large obligations to be met by the district by the imposition of taxes upon the property therein to pay such bonds, obligations and expenses in connection with the construction of the system and its operation. The plaintiff further avers that the laws above referred to, particularly as they relate to the issuance of bonds and the imposition of taxes upon the property in the district to pay for such bonds and other expenses, are unconstitutional and void.

Without attempting to give the substance of the statutes above referred to, it may be said in a general way that provision is made for the formation of distribution districts by a majority vote of the electors residing within the proposed district when a petition has been filed by a certain number of the electors requesting that the question of the formation of a district be submitted to the electors. The electors also select directors who are authorized by law to manage the affairs of the district. When so formed the district has power of eminent domain, to make contracts,

to sue and be sued, and such other powers as are granted under the general incorporation laws of the state. The district through its board of directors, when authorized by the electors, has power to issue bonds and to determine the amount of money necessary to be raised to conduct the business affairs of the corporation. The amount of bonds which may be issued is limited to 6 per cent. of the last assessed valuation of property in the district. Bonds so issued may not draw a greater rate of interest than 6 per cent., nor run for a period longer than 25 years. The board of directors may not issue bonds in the first instance in a greater amount than the estimated cost of the distribution system, as set forth in the petition to establish the district. Should the district in the first instance not set out the method of raising the necessary funds by the issuance of bonds, or should the board of directors determine that it is necessary to increase the amount of bonds in excess of the amount set out in the petition for the organization of the district, or should it be necessary to make any additional issue of bonds therefor, the same shall be done only after being submitted to the electors, and be authorized by at least a majority vote thereof. The board is given power to employ such persons as may be necessary for the operation of the system, and to propose a schedule of charges for service with the district, and upon approval by the state railway commission, said schedule shall be the legal schedule for such district. The law also provides for registering of the bonds with the auditor of public accounts and with the county clerk before the same may be sold. Provision is also made requiring any person, firm, or corporation engaged in the production of electric current for commercial purposes, passing through or adjacent to any distribution district, to furnish electric current to the district at rates substantially the same as those under which it furnishes electric current to other customers, provided that the plant of such person, firm, or corporation is of sufficient capacity to furnish said current to said district without prejudice to the service in the territory already covered.

Elliott v. Wille.

It is contended by the plaintiff, and also in a brief filed *amici curiæ;* that the laws above referred to, and particularly the parts thereof which authorize the issuance of bonds of the district, and the imposition of taxes upon property therein to pay for such bonds, and the expenses of operation of the distribution system, are unconstitutional and void.

It is argued that the legislative acts under which the defendants are proceeding contravene several provisions of our Constitution. The main argument is based upon the theory that the distribution of light, heat and power, as contemplated by the act, is for a private purpose, and hence in contravention of the implied constitutional inhibition that private property may not be taken for a private purpose without the owner's consent. Of course, if it be true that the distribution system contemplated by the act is for a private purpose, to be paid for by taxation upon the property within the district, such legislation would be in contravention of our Constitution. Section 21, art. I of our Constitution declares: "The property of no person shall be taken or damaged for public use without just compensation therefor." This provision has been held by implication to prohibit the taking of private property for private use of any character, without the owner's consent. That taxation of property for a private purpose is the taking of property cannot be gainsaid. *Welton v. Dickson,* 38 Neb. 767; *State v. Cornell,* 53 Neb. 556.

On the other hand, it is familiar law that the legislature may authorize taxation of property for a public purpose. *State v. Cornell,* 53 Neb. 556. In passing upon the question whether the object of raising money by taxation is for a public purpose, the rule is established in this state that, if the question is doubtful, the court will not set its judgment against that of the lawmakers.

For the purpose of showing the wide variety and forms of legislation in which taxation has been held valid on the ground that it was for a public use, we cite a few of the cases from this court. In *Hallenbeck v. Hahn,* 2 Neb. 377,

bonds of a county in aid of the construction of a railroad were held valid, and not in conflict with the Bill of Rights that "The property of no person shall be taken or damaged for public use without just compensation therefor." In *Traver v. Merrick County,* 14 Neb. 327, it was held: "A water grist-mill erected for public use, the rates of toll to be determined by the county commissioners, and being subject to regulation by the legislature, is a work of internal improvement within the meaning of the act of 1869, and bonds voted to aid its construction are valid." In *State v. Adams County,* 15 Neb. 568, it was held that bonds in aid of a grist-mill operated by steam were invalid as being for a private purpose. The distinction is set out in the opinion. In *Board of Directors of Alfalfa Irrigation District v. Collins,* 46 Neb. 411, an act authorizing the district to issue bonds and to pay the same by taxation was held to be for a public purpose. In *State v. Cornell,* 53 Neb. 556, an act authorizing counties to issue bonds to provide for the levy of taxes to pay the same to enable the county to participate in interstate expositions was held to be for a public purpose. In *Bell v. City of David City,* 94 Neb. 157, it was held that the city had authority to erect and operate a municipal electric light system. In *State v. Miller,* 104 Neb. 838, legislation making provision for farm bureaus as governmental agencies of an educational nature to disseminate among farmers scientific knowledge for the improvement of agriculture was held to be a "public purpose" within the taxing power of the state. In *Consumers Coal Co. v. City of Lincoln,* 109 Neb. 51, the principle is announced that "The maintenance of a municipal fuel yard for the purpose of selling fuel to the inhabitants of the city is a 'public purpose,' for which money raised by taxation may be used."

In the light of these decisions, it would seem that the distribution of light, heat and power by electrical current among the inhabitants of the district was for a public purpose. The use of the electric current is open to all the inhabitants of the district, and its rates subject to regulation.

The mere fact that some of the inhabitants may not de-. sire to use it does not militate against its public character. We hold, therefore, that the distribution of electric current for light, heat and power, under the provisions of the statute, was for a public purpose, and that money in payment therefor could be raised by taxation.

Having determined that the system of distribution was for a public purpose, it follows that the legislation does not violate the section of the Bill of Rights that private property shall not be taken for a private use; nor does it violate the provisions of the state or federal Constitutions that one may not be deprived of his property without due process of law.

It is next urged by the plaintiff that the act in question contravenes section 14, art. III of the Constitution, as it appears in Comp. St. 1922, which declares: "No bill shall contain more than one subject, and the same shall be clearly expressed in its title." The title to the act in question, chapter 217, Laws 1919, is as follows: "An act providing for the creation and incorporation of districts for the distribution of light, heat and power, defining the powers and government of such districts and the regulation of rates and methods of distribution therein." It is argued that the provisions of the act authorizing the raising of money by taxation, the issuance of bonds, and the right of eminent domain, are beyond the scope of the title to the act. We do not agree with this contention. The clause in the Constitution now being considered does not require that the title to an act shall be a complete abstract of the bill. Its purpose is to prevent surreptitious legislation. The phrase in the title, "defining the powers and governnment of such districts," in our opinion is broad enough to authorize the provisions of the act.

It is next urged by the plaintiff that the legislation in question contravenes sections 6 and 7, art. VIII of our Constitution, as recorded in Comp. St. 1922. Plaintiff's position in regard to the applicability of section 6 to the present situation is not argued, and we are unable to discover

Elliott v. Wille.

anything in that section which the act under consideration contravenes. Section 7, art. VIII, among other things, declares: "The legislature shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes." A discussion of the meaning of the phrase "corporate purposes," as used in this section of the Constitution, as distinguished from municipal or governmental purposes, may be found in *Metropolitan Utilities District v. City of Omaha, p. 93, post.*

By the act in question the legislature has not attempted to impose a tax upon the municipal corporation, or the inhabitants or property thereof. Neither has it created a situation, which, independent of the action of a majority of the electors, imposes any obligation on the district to be paid for by taxation. The legislature has provided a method by which the electors may organize a distribution district, with corporate powers, but has left the question of the issuance of bonds within certain limitations, and the imposition of taxes, within the hands of a majority of the electors of the district. It cannot be doubted that the legislature has power to authorize the creation of special districts comprising a part of the county for the purpose of promoting some object for the benefit of the public. Examples of this character are found in our school districts, road districts, paving districts, irrigation and drainage districts, and perhaps others. We find nothing in the legislation in question which contravenes section 7, art. VIII of the Constitution.

From a consideration of the record, we are of the view that the action of the trial court in sustaining the demurrer, and dismissing the cause of action, was right. The judgment is, therefore,

AFFIRMED.

Note—See Electricity, 20 C. J. p. 305, sec. 2 (1925 Ann.); Eminent Domain, 20 C. J. p. 584, sec. 68—Municipal Corporations, 28 Cyc. p. 1660; Statutes, 36 Cyc. pp. 1017, 1026, 1028.

Elliott v. Wille.

The following opinion on motion for rehearing was filed October 20, 1924. *Former judgment of affirmance vacated, and judgment of district court reversed, with directions.*

1. **Constitutional Law:** EMINENT DOMAIN. A legislative act, which authorizes private individuals to create and fix the ɔoundaries of a district for public improvement, to be paid for by taxes levied on the property within the district, without any provision for determination by a competent tribunal whether the creation of the district and the construction of the improvement will promote public health, convenience or welfare, and without any provision for determination whether the owner's property has been arbitrarily or unjustly included in the district, or whether his property will receive any benefit from the proposed improvement, is invalid because it authorizes the taking of private property for a public use without just compensation and deprives the owner of his property without due process of law.

2. ———: POWER OF LEGISLATURE. The legislature may not delegate to private individuals either legislative or judicial functions.

3. ———: EMINENT DOMAIN. Sections 7147-7154, Comp. St. 1922, as amended by chapter 169, Laws 1923, authorize the taking of private property for a public use without just compensation and authorize the taking of private property without due process of law, and are violative of both the state and federal Constitution.

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, GOOD and THOMPSON, JJ.

PER CURIAM.

This case has been heretofore submitted to this court and an opinion rendered. *Elliott v. Wille, ante,* p. 78. Upon consideration of a motion for rehearing a reargument has been allowed.

This action involves the validity of sections 7147-1754, Comp. St. 1922, and of the amendment to section 7153 contained in chapter 169, Laws 1923. A statement of the issues and an outline of the legislative provisions involved in this action may be found in the former opinion and will not be here repeated.

In the former opinion we held: "The distribution of light,

heat, and power as contemplated in sections 7147-7154, Comp. St. 1922, as amended by chapter 169, Laws 1923, is for a public use as distinguished from a private purpose." We still entertain the view that the distribution of light, heat and power in rural communities by the use of electricity by a district, properly created for the purpose in such a manner as to safeguard the rights of owners of property within the district, is or may be for a public use and purpose, but, in determining whether any particular legislation which authorizes the creation of such a district is valid, it is proper to examine and ascertain what may be done or accomplished under and pursuant to such statutory provisions. If the statutes, when fairly construed, authorize and sanction the taking of private property without just conpensation, or deprive persons of their property without due process of law, then such legislation must be held invalid.

Under the legislative acts in question, when a petition praying for the formation of a district for the purpose of distributing light, heat or power by the use of electric current, and for the election of three directors of such proposed district, setting forth the boundaries of the proposed district, the estimated cost of the distribution system and the method proposed for raising necessary funds, whether by bonds or special tax, and signed by not less than 10 per cent. of the freeholders of the proposed district, is filed with the county board, it then becomes the duty of such board to order a special election within the proposed district. At this election all who are electors under the general election laws and reside in the proposed district may vote, and, if a majority of the votes cast at such special election is in favor of the proposed district, it then becomes a district. The district may then, through its officers, proceed to construct a distribution system and to levy taxes or issue bonds to defray the cost of the system.

At first blush it might seem that the plan of organizing such districts is fair and equitable and that injustice to no one could be apprehended. Upon a closer scrutiny and

Elliott v. Wille.

a careful consideration of the various provisions of the statutes, it becomes apparent that the petitioners in the first instance fix the boundaries of the proposed district. To be sure, the district is not created until the plan is approved by majority vote of the electors of the district, but as the petitioners fix the boundaries in the petition they can so arrange the boundaries as to exclude from the district a small plat of land on which any elector might reside. In this manner, any elector who would not vote with the petitioners for the creation of the district could be excluded, and, by a like means, the boundary lines might be run so as to include within the district practically all of the land of any owner who was opposed to the creation of the district. The major portion of his land might be included; that particular part on which he resided could be excluded. He could be denied a voice in the creation of the district or the management of its affairs, while his property could be taxed to pay the cost of constructing and maintaining the distribution system. It is entirely within the range of possibilities that two or three designing persons could thus organize a distribution district so that they would be the only persons having a voice in creating the district or the management of its affairs and who would be the only ones who would receive any benefits from the construction of such a system. At the same time they could include the major portion of the lands of 50 or more other farmers so that such lands would necessarily bear the greater part of the burden of the taxation to pay the cost of construction and maintenance of the distribution system.

The statutes in question make no provision for a tribunal to determine whether any lands have been unjustly included in or excluded from the district, or whether the organization of a particular distribution district will be for the public convenience or welfare, save and except the action of the petitioners and their self-selected electorate. The situation is not unlike that which would exist if a party to an action could select the jury to whom his cause was to be tried. If disposed to be unfair, he might select

Elliott v. Wille.

only such persons for jurors as would view his contention with favor, and under such circumstances he would be reasonably sure of a favorable verdict. It is intolerable to think that such a situation should exist under sanction of law.

In enacting the legislation under consideration we have no doubt the legislature was actuated by proper motives, but it has failed to make any provision to safeguard the rights of property owners whose property may receive no benefit from the public improvement contemplated and yet be taxed to construct and maintain it, or whose property has been wrongfully included in the district.

It is argued on behalf of defendants that non-resident owners of land within the district have no more right to complain than would nonresident owners of land in a city or village, when those municipalities undertake to construct light or water plants or sewer systems. The argument is fallacious in this, that the boundaries of a city or village are not fixed and determined by private individuals, and, moreover, provisions are made for the exclusion of lands that are wrongfully included within a city or village. The fixing of boundaries of a political subdivision of a state into counties or districts for public purposes is a legislative function. The legislature may authorize the organization of districts for public purposes by other governmental bodies, and the proceeding may be proposed or initiated by private individuals. Where the latter course is pursued, there must be some provision for determining whether the particular district is for the public health, convenience or welfare, and a means by which an aggrieved property owner, whose property is injuriously affected, may have his rights judicially determined. The legislature may not delegate to private individuals either legislative or judicial functions. Where a legislative act permits the organization of districts, for the construction of a public improvement, by private individuals, to be paid for by a tax on all the property in the district, and no provision is made for a hearing by any tribunal as to the right of

property owners who may be injuriously affected or wrongfully included within the district, it may result in the taking of private property for a public purpose without just compensation, and in the taking of private property without due process of law.

Sections 7147-7154, Comp. St. 1922, and section 7153, as amended by chapter 169, Laws 1923, authorize and permit the taking of private property for a public purpose without just compensation and the taking of private property without due process of law. The statutes violate both the state and federal Constitution and are therefore invalid.

It follows that the affirmance in *Elliott v. Wille, ante,* p. 78, should be and hereby is vacated. The demurrer to the petition should have been overruled and the injunction issued as prayed by plaintiff. The judgment of the district court is reversed, with directions to overrule the demurrer to the petition and to issue the injunction as prayed by plaintiff.

REVERSED, WITH DIRECTIONS.

Note—See Constitutional Law, 12 C. J. p. 2160, sec. 1061; p. 842, sec. 327; p. 808, sec. 241; Eminent Domain, 20 C. J. p. 645, sec. 124—Municipal Corporations, 28 Cyc. p. 1149.