STATE OF NEBRASKA, EX REL. FRANK B. HIBBARD, V. JOHN F. CORNELL, AUDITOR OF PUBLIC ACCOUNTS.

FILED JUNE 7, 1900. No. 11,220.

1. **Salaries: STATUTE: APPROPRIATION.** Bills making appropriations for salaries of officers of the state government are prohibited by section 19, article 3, of the constitution from containing a provision on any other subject.

2. ————: OFFICERS NOT FIXED BY CONSTITUTION. This constitutional restriction is not confined alone to officers created by the constitution, but extends to all officers of the state government, whether their salaries are fixed by the constitution or their compensation is left to legislative discretion.

3. **Constitution: LEGISLATIVE INTERPRETATION.** While a practical interpretation of the constitution by the legislature will not be lightly disregarded in doubtful cases, yet, when the language of the constitution is free from ambiguity, an interpretation thereof by the legislative department can not be invoked to nullify the fundamental law.

4. **Deputy Food Commissioner.** The deputy food commissioner created by chapter 35, Session Laws, 1899, is an officer of the state government, and not a mere employee. '

5. **Appropriation: CONSTITUTION.** Section 12 of said chapter 35, making appropriation for the salary of deputy food commissioner, is inimical to section 19, article 3, of the constitution, since other portions of said act contain legislation upon another subject.

ORIGINAL application for mandamus to require the respondent to draw his warrant for the salary of the deputy food commissioner. *Writ denied.*

*Constantine J. Smyth, Attorney General,* and *Willis D. Oldham, Deputy,* for the state.

*Alfred M. Post* and *Eugene J. Hainer,* for relator:

Government, in the broadest sense of the term, is frequently employed as synonymous with state or body politic, likewise as applicable to the administration, or persons charged with the execution of the law. It is, however, in its technical or constitutional meaning "that form of fundamental rules and principles by which a nation or state is governed" (Rapalje, Law Dictionary); and in the latter restricted or concrete sense of the term it is evidently employed in this connection.

Although the precise question herein involved does not appear to have been determined, like constitutional restrictions have been by this court uniformly held applicable alone to officers named in the constitution itself, and never to such mere subordinates, or agents, of the executive officers of the government as the deputy food commissioner, or deputy commissioner of labor, etc. Such indeed was the contemporaneous interpretation by every department of the state government, an interpretation which by a subsequent uniform and consistent course of the several departments has become the fixed and settled policy of the state. *State v. Weston,* 4 Nebr., 234; *In re Appropriations,* 25 Nebr., 662; *Douglas County v. Timme,* 32 Nebr., 272.

Among the many legislative and executive acts evidencing interpretation of the constitutional restrictions here involved in accordance with the foregoing contention may be cited: 1. "An act regulating the state library"—fixing the salary of the state librarian and authorizing the state auditor to quarterly draw his warrant for such salary as it became due and annually appropri-

ating $200 for the use of the library. Laws, 1871, p. 52. 2. The creation of the office of bookkeeper in the offices of the secretary of state and commissioner of public lands and buildings by provision of the act making appropriations for salaries of officers of the government (Laws, 1877, p. 237), and the creation and appropriation from time to time for salaries of insurance deputy, bond clerk and stenographer for the auditor of public accounts. 3. Act creating the office of superintendent of the reform school and making appropriations for the salary thereof. Laws, 1879, p. 413. 4. Act creating the office of superintendent of census and making appropriation for salary thereof. Laws, 1885, p. 97. 5. Act creating the office of state veterinary surgeon, making appropriation for salary thereof. Laws, 1885, p. 73. 6. Act creating state board of pharmacy and making provisions for the payment of salaries of its secretaries. Laws, 1887, p. 507. 7. Act to provide for stenographers for the judges of the supreme court and making appropriations for the salary thereof. Laws, 1887, p. 381. 8. Act creating the office of commandant of the soldiers' and sailors' home and making appropriation for salary thereof. Laws, 1887, p. 622. 9. Act creating office of commissioner and deputy commissioner of labor and making appropriation for salary thereof. Laws, 1887, p. 470. 10. Act creating a state board of health, providing for compensation of secretaries and fees to be paid by applicants for certificates. Laws, 1891, p. 280-6; Laws, 1897, p. 278. 11. Act creating office of commissioner general for Nebraska at the Columbia Exposition and making appropriation for salary thereof. Laws, 1891, p. 395. 12. Act creating a state board of dentistry and providing for means to carry out its provisions and to pay its secretaries. Laws, 1895, p. 197. 13. Act creating board of directors of Trans-Mississippi Exposition and making appropriations for salary thereof. Laws, 1897, p. 367. The money appropriated by the foregoing and acts of like character has been in every instance paid out upon warrants drawn by respond-

ent and his predecessors in office without recorded objection. The contemporaneous construction of a constitutional provision, which has for many years been adhered to by the legislative and executive departments of the government, will not be lightly disregarded by the court, and will, even in doubtful cases, generally be held conclusive. *State v. Holcomb*, 46 Nebr., 88; *State v. Harrison*, 116 Ind., 300. Another and quite as simple a solution of the question is found in the fact that the deputy food commissioner, the creature of his principal and depending upon the pleasure of the latter for his tenure, is not within the inhibition relied upon, for the reason that he is a mere employee, and in no constitutional sense of the term an officer. *Somers v. State*, 58 N. W. Rep. [S. Dak.], 804, 59 N. W. Rep., 962; *Gibbs v. Morgan*, 39 N. J. Eq., 128; *State v. Johnson*, 27 S. W. Rep. [Mo.], 399.

*William B. Price, contra.*

*T. J. Mahoney, amicus curiæ,* argued upon matters not decided by the court.

NORVAL, C. J.

This is an original application for a peremptory writ of mandamus to require the respondent, as auditor of public accounts, to audit and adjust the claim of relator against the state for salary as deputy food commissioner. Relator was appointed to said position by the governor on or about July 1, 1899, in pursuance of chapter 35, Laws, 1899. This act is entitled "An act creating a food commission; defining its powers and duties and of the officers and agents thereof; regulating the manufacture and sale of foods including imitation butter and imitation cheese and dairy products; providing for a system of reports, inspection and permits and fixing fees for the same; providing penalties for violation of this act; making an annual appropriation for carrying this act into effect; and repealing all acts and parts of acts in conflict herewith."

The act purports, *inter alia*, to create a food commission; to make the governor the food commissioner, with authority to appoint a deputy food commissioner at a salary of $1,500 per annum, payable monthly, together with his expenses actually and necessarily incurred in discharging the duties of his office; to authorize such deputy to employ a clerk at a salary not to exceed $75 a month; to define the duties of the food commission and its commissioners; to require dealers in imitation butter and imitation cheese to make reports; to provide for permits for dealers and manufacturers of certain articles and for the inspection thereof; to prescribe fees, and to provide for their payment into the state treasury and penalties for the violation of the provisions of the act. The 12th section declares: "There is hereby annually appropriated out of the funds of the state not otherwise appropriated, for the purpose of carrying into effect the provisions of this act, the sum of five thousand dollars ($5,000). Provided, that the amount paid out shall in no case exceed the amount received by the state, as provided for in this act." The respondent refuses to audit the claim, for the reason that said section 12 of the act contravenes section 19, article 3, of the constitution, which provides, *inter alia:* "Bills making appropriations for the pay of members and officers of the legislature, and for the salaries of the officers of the government, shall contain no provision on any other subject." This provision of the fundamental law is plain enough. It requires that legislative acts which appropriate money from the state treasury to pay officers and members of the legislature, and for salaries of state officers, shall contain no other subject of legislation. This restriction upon the power of the lawmaking body must be observed and enforced.

It is argued that the restrictive or prohibitory features of said section of the constitution are applicable alone to officers named in the fundamental law. To this doctrine we are unable to assent. Certainly, the language of the section contains no such distinction, and the courts have

no right to make it by interpolating words into the section. Moreover, said section could not have been intended by its framers to be applicable alone to state officers created by the constitution, since it requires no appropriation of moneys from the treasury by the legislature to pay such officers. As to them the constitution itself makes the appropriation. *State v. Weston*, 4 Nebr., 216. It follows that if the constitutional provision under consideration is not meaningless, it applies to those officers of the state government whose salaries are not fixed by the constitution, but whose compensation is left to the discretion of the legislature. It is true, the legislature more than once has created an office, and in the same act attempted to make an appropriation for the payment of the salary thereof, which constitutes a legislative construction of the section of the constitution we are considering adverse to the views we have expressed, and if the section would admit of more than one interpretation, the legislative construction would probably be controlling. But the interpretation by the legislative department can not be invoked, since the meaning of the constitutional provision is not involved in doubt.

In argument it is also suggested that the deputy food commissioner is in no constitutional sense an officer, but is a mere employee. The provisions of chapter 35 will not justify such an interpretation. The governor, who is a state officer, is made the food commissioner, and it would seem strange to designate the deputy appointed by the governor a mere employee. Section 2 of said chapter provides that "said deputy food commissioner shall hold his office," etc. Section 3 requires such deputy to give a bond "conditioned for the faithful discharge of his duties and the accounting for all money and other property that may come into his hands by virtue of his office." Further, it is provided that said deputy shall make an annual report to the governor the same as other state officers. There is no escaping the conclusion that the deputy food commissioner is an officer of the state

government, and not a mere clerk or employee. It follows that section 12 of said chapter 35 conflicts with section 19, article 3, of the constitution, and is void.

A brief has been filed by Hon. T. J. Mahoney on behalf of persons not party to the record, who claim to be indirectly interested in the decision, in which it is argued that the act creating the food commission is inimical to section 26, article 5, of the state constitution, which declares that "no other executive state office shall be continued or created, and the duties now devolving upon officers not provided for by this constitution shall be performed by the officers herein created." Having reached the conclusion that no warrant can be drawn in payment of relator's salary by reason of the invalidity of section 12 of said chapter 35, the constitutional question urged upon the attention of the court by Mr. Mahoney will not now be considered.

WRIT DENIED